### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ANTHONY QUENTERE, individually and on behalf of similarly situated individuals,<br><br>        Plaintiff,<br><br>    v.<br><br>CORNFIELDS, LLC d/b/a G.H CRETORS,<br><br>        Defendant. | Case No. 1:20-cv- 07306 |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Anthony Quentere ("Quentere" or "Plaintiff") individually and on behalf of all others similarly situated (the "Class"), by and through his attorneys, brings the following Amended Class Action Complaint ("Amended Complaint") pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendant Cornfields, LLC d/b/a G.H. Cretors ("Cornfields" or "Defendant") its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendant is a Delaware limited liability company with a warehouse located in Waukegan, Illinois, that manufactures private-label popcorn brand G.H. Cretors Popped Corn.

2.      Defendant employs individuals directly, as W-2 employees, and through staffing agencies, such as Summit Staffing. These individuals work at Defendant's warehouse located in Waukegan, Illinois.

3.     Defendant requires each worker to enroll their fingerprints in its worker database. Defendant uses the worker database to monitor the time worked by each hourly worker.

4.     Defendant's workers are required to scan their fingerprints to enroll and clock in and clock out on its biometric timekeeping device.

5.     Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – fingerprints are unique, permanent biometric identifiers associated with each worker. This exposes Defendant's workers to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, Facebook/Cambridge Analytica, and Suprema data breaches or misuses – workers have __no__ means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.     Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendant's – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

7.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

8.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal

and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/ worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.      In the United States, law enforcement, including the Federal Bureau of Investigation and Immigration and Customs Enforcement, have attempted to turn states' Department of Motor Vehicles databases into biometric data goldmines, using facial recognition technology to scan the faces of thousands of citizens, all without their notice or consent. Drew Harwell, *FBI, ICE Find State Driver's License Photos Are a Gold Mine for Facial-Recognition Searches*, The Washington Post (July 7, 2019), *available at* https://www.washingtonpost.com/ technology/2019/07/07/fbi-ice-find-state-drivers-license-photos-are-gold-mine-facial-recognition-searches/?noredirect=on&utm_term=.da9afb2472a9.

10.      This practice has been criticized by lawmakers. Some states, including Illinois, have refused to comply with law enforcement's invasive requests. *State Denying Facial Recognition Requests*, Jacksonville Journal-Courier (July 9, 2019), *available at* https://www.myjournalcourier.com/news/article/State-denying-facial-recognition-requests-14081967.php.

11.     In August 2019, it was widely reported that Suprema, a security company responsible for a web-based biometrics lock system that uses fingerprints and facial geometry scans in 1.5 million locations around the world, maintained biometric data and other personal information on a publicly accessible, unencrypted database. *Major Breach Found in Biometrics System Used by Banks, UK police and Defense Firms*, The Guardian (Aug. 14, 2019), *available at* https://www.theguardian.com/technology/2019/aug/14/major-breach-found-in-biometrics-system-used-by-banks-uk-police-and-defence-firms.

12.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

13.     Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards its workers' statutorily protected privacy rights and unlawfully collects, stores, disseminates, and uses workers' biometric data in violation of BIPA. Specifically, Defendant has violated and continues to violate BIPA because it did not and continues not to:

a.  Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, disseminated and used, as required by BIPA;

b.  Develop and adhere to a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' fingerprints, as required by BIPA;

c.  Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their fingerprints, as required by BIPA; or

d.  Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA.

14.     Accordingly, Plaintiff, on behalf of himself as well as the putative Class, seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the

unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

15.     Plaintiff Anthony Quentere is a natural person and a resident of the State of Illinois.

16.     Defendant is a Delaware limited liability company that is registered with the Illinois Secretary of State and conducts business in this District.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B) because the proposed class has 100 or more members, the amount in controversy exceeds $5,000,000.00, and the parties are minimally diverse.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## FACTUAL BACKGROUND

**I.      The Biometric Information Privacy Act**

19.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

20.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique

biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

21.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

22.     Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS § 14/20.

23.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

      a.  Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

      b.  Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

      c.  Receives a written release executed by the subject of the biometric identifier or biometric information.

6

*See* 740 ILCS § 14/15(b).

24.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and – most importantly here – fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id*.

25.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.*, 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

26.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

27.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology.  Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

28.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed.  Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

29.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure.  Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendant Violates the Biometric Information Privacy Act

30.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using workers' biometric data as an authentication method stopped doing so.

31.     However, Defendant failed to take note of the shift in Illinois law governing the collection and use of biometric data. As a result, Defendant continues to collect, store, use and disseminate workers' biometric data in violation of BIPA.

32.     Specifically, all Cornfields workers are required to have their fingerprints scanned to enroll them in its worker database(s).

33.     Cornfields has possession and control over a time tracking system that requires workers to use their fingerprint as a means of authentication. Unlike a traditional timeclock, Defendant's workers have to use their fingerprints to punch in and out of work.

34. The biometric timeclocks at issue were at all times material under the possession and control of Cornfields because they were located at Defendant's facilities and used by workers directed and controlled by Cornfields to track their time worked.

35. Defendant fails to inform workers that it discloses their fingerprint data to at least two third-parties: the biometric device vendor and the workers' staffing companies; fails to inform workers that it discloses their fingerprint data to other, currently unknown, third party web services providers, which host the biometric data in their data centers; fails to inform workers of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from workers before collecting their fingerprints.

36. Defendant also failed to develop and adhere to a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying workers' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

37. Because Cornfields has no publicly available retention schedule or destruction guidelines, Plaintiff has no reason to believe Defendant ever destroyed his or similarly situated workers' biometric data in accordance with BIPA, and in fact, believes the opposite.

38. Because BIPA-compliant retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data do not exist, Defendant has not and will not destroy his and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the worker's last interaction with each company, as required by BIPA.

39. The Pay By Touch bankruptcy, which triggered the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a fingerprint but are not

aware to whom or for what purposes they are doing so – is dangerous. This bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers such as a fingerprint, who exactly is collecting their biometric data, where it will be transmitted, for what purposes it will be transmitted, and for how long. Defendant disregards these obligations and their workers' statutory rights and instead unlawfully collect, store, use, and disseminate workers' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

40. Because proper retention schedules and destruction guidelines do not exist, Cornfields workers are not told what might happen to their biometric data if and when Defendant merges with another company or worse, if and when Defendant's business folds, or when the other third parties' that have received their biometric data businesses fold.

41. Because Defendant neither publishes a BIPA-mandated data retention policy nor discloses the purposes for their collection of biometric data, Cornfields workers have no idea at the time of collection that Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told at the time of collection to whom Defendant currently discloses their biometric data to, or what might happen to their biometric data in the event of a merger or a bankruptcy.

42. These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

43. By and through the actions detailed above, Defendant disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

10

### III.    Plaintiff Anthony Quentere's Experience

44.    Plaintiff Anthony Quentere was staffed by Summit Staffing at Cornfields as a picker at its facility located at 3898 Sunset Avenue, Waukegan, Illinois from 2017 to 2018.

45.    At all times material, Cornfields directed and controlled Plaintiff's work and work environment, including how he clocked in and out of work.

46.    Plaintiff was required to scan his fingerprint each time he began and ended his workday, as well as each time he clocked in and out for breaks.

47.    Defendant did not inform Plaintiff in writing or otherwise of the purpose(s) and length of time for which his fingerprint data was being collected, did not obtain a written release from Plaintiff to collect, store, or use his fingerprint data, did not develop and adhere to a publicly available retention schedule and guidelines for permanently destroying Plaintiff's fingerprint data, and did not obtain Plaintiff's consent before disclosing or disseminating his biometric data to third parties.

48.    Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collects, stores, uses and/or disseminates his biometric data.

49.    Plaintiff has never seen, been able to access, or been informed of any biometric data retention policy developed by Defendant, nor has he ever seen, been able to access, or been informed of whether Defendant would ever permanently delete his biometric data.

50.     Plaintiff has never been provided with nor ever signed a written release allowing Defendant to collect, store, use, or disseminate his biometric data.

51.    Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA alleged herein.

52.     No amount of time or money can compensate Plaintiff if his biometric data has been compromised by the lax procedures through which Defendant captures, stores, uses, and disseminates his and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not have provided his biometric data to Defendant if he had known that Defendant would retain such information for an indefinite period of time without his consent.

53.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

54.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

55.     Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, Plaintiff brings claims on his own behalf and as representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1 *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

56.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a

biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives

a written release executed by the subject of the biometric identifier or biometric information. 740

ILCS 14/15.

57.     Plaintiff seeks class certification for the following class of similarly-situated

employees under BIPA:

> All individuals working for Power Solutions in the State of Illinois who had their
> fingerprints collected, captured, received, stored or otherwise obtained or disclosed
> by Defendant during the applicable statutory period.

58.     This action is properly maintained as a class action under Rule 23 because:

    a.      The class is so numerous that joinder of all members is impracticable;

    b.      There are questions of law or fact that are common to the Class;

    c.      The claims of Plaintiff are typical of the Class; and

    d.      Plaintiff will fairly and adequately protect the interests of the Class.

### Numerosity

59.     The total number of putative class members exceeds 100 individuals. The exact

number of class members can easily be determined from Defendant's records.

### Commonality

60.     There is a well-defined commonality of interest in the substantial questions of law

and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been

harmed by Defendant's failure to comply with BIPA. The common questions of law and fact

include, but are not limited to the following:

    A.      Whether Defendant collected, captured or otherwise obtained Plaintiff's
            biometric identifiers or biometric information;

    B.      Whether Defendant properly informed Plaintiff of its purposes for
            collecting, using, and storing his biometric identifiers or biometric
            information;

C.   Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

D.   Whether Defendant disclosed or re-disclosed Plaintiff's biometric identifiers or biometric information;

E.   Whether Defendant sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

F.   Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

G.   Whether Defendant complies with any such written policy (if one exists);

H.   Whether Defendant used Plaintiff's fingerprints to identify him;

I.   Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.   Whether the violations of BIPA were committed negligently; and

K.   Whether the violations of BIPA were committed recklessly or intentionally.

61.   Plaintiff anticipates that Defendant will raise defenses that are common to the class.

## **Adequacy**

62.   Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## **Typicality**

14

63.     The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

64.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23(b)(3).

### Predominance and Superiority

65.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members.  A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable.  Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually.  Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

66.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or

substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/15(a): Failure to Institute, Maintain, and Adhere to Publicly-Available Retention Schedule**

67. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

68. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

69. Defendant fails to comply with these BIPA mandates.

70. Defendant is a Delaware limited liability company that conducts business in Illinois, and therefore, qualifies as a "private entity" under BIPA. 740 ILCS 14/10.

71. Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

72. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

73. Defendant failed to develop and adhere to a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

74.     Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's or the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

75.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## SECOND CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

76.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.     BIPA requires companies to obtain informed written consent from individuals **before** acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] *first*: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release

executed by the subject of the biometric identifier or biometric information…" 740 ILCS §
14/15(b) (emphasis added).

78.     Defendant fails to comply with these BIPA mandates.

79.     Defendant is a Delaware limited liability company that conducts business in
Illinois, and therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

80.     Plaintiff and the Class are individuals who have had their "biometric identifiers"
collected by Defendant (in the form of their fingerprints), as explained in detail in Sections II and
III, *supra*. *See* 740 ILCS § 14/10.

81.     Plaintiff's and the Class's biometric identifiers were used to identify them and,
therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

82.     Defendant systematically and automatically collected, captured, or otherwise
obtained Plaintiff's and the Class's biometric identifiers and/or biometric information without **first**
obtaining the written release required by 740 ILCS § 14/15(b)(3).

83.     Defendant did not inform Plaintiff and the Class in writing that their biometric
identifiers and/or biometric information were being collected, captured, or otherwise obtained, nor
did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of
term for which their biometric identifiers and/or biometric information were being collected,
captured, or otherwise obtained, as required by 740 ILCS § 14/15(b)(1)-(2).

84.     By collecting, capturing, and otherwise obtaining Plaintiff's and the Class's
biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's
and the Class's rights to privacy in their biometric identifiers or biometric information as set forth
in BIPA. *See* 740 ILCS § 14/1, *et seq*.

85.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## THIRD CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

86.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without obtaining consent for that disclosure. *See* 740 ILCS § 14/15(d)(1).

88.     Defendant fails to comply with this BIPA mandate.

89.     Defendant is a Delaware limited liability company that conducts business in Illinois, and therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

90.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

91.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

92.     Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without obtaining the consent required by 740 ILCS § 14/15(d)(1).

93.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq.*

94.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Anthony Quentere respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Anthony Quentere as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.     Declaring that Defendant's actions, as set forth above, violate BIPA;

C.     Awarding statutory damages of $5,000 for *each* intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.      Declaring that Defendant's actions, as set forth above, were intentional and/or reckless;

E.      Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.      Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.      Awarding such other and further relief as equity and justice may require.

Date:  June 1, 2021          Respectfully Submitted,

                                    */s/ Haley R. Jenkins*
                                    Ryan F. Stephan
                                    James B. Zouras
                                    Haley R. Jenkins
                                    **STEPHAN ZOURAS, LLP**
                                    100 N. Riverside Plaza,
                                    Suite 2150
                                    Chicago, Illinois 60606
                                    312.233.1550
                                    312.233.1560 *f*
                                    rstephan@stephanzouras.com
                                    jzouras@stephanzouras.com
                                    hjenkins@stephanzouras.com

                                    **ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on June 1, 2021, I filed the attached with the Clerk of the

Court using the ECF system, which will send such filing to all attorneys of record.

*/s/ Haley R. Jenkins*